Robert MOINE,
*Petitioner,*

*v.*

OREGON GOVERNMENT ETHICS
COMMISSION,
*Respondent.*

(92E-326; CA A81630)

877 P2d 96

Judith N. Selich argued the cause for petitioner. With her on the reply brief was Litchfield & Carstens.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and Leeson and Haselton, Judges.

LEESON, J.

## LEESON, J.

Petitioner seeks review of an Oregon Government Ethics Commission (Commission) order that required him to pay civil penalties totalling $9,000 and to forfeit $90,437. The sole issue is whether the Commission has authority to investigate and punish violations of ORS chapter 244 that were committed by a person as a public official, if that person is no longer a public official. We hold that the Commission has that authority.

The facts are not disputed. Before his retirement on September 30, 1990, petitioner was employed by the Oregon State Police (OSP) as a major. His duties included negotiating with private parties for the development of OSP facilities. While negotiating with Norm Schroth for the development of OSP facilities in Gold Beach, Klamath Falls, Newport and Umatilla, petitioner engaged in a private transaction with Schroth. Schroth gave petitioner a motor home and a car, valued together at $11,425, and petitioner gave Schroth three handguns, valued together at $1,257. Petitioner's net financial gain from that trade was $10,168. During that same period, Schroth also gave petitioner an expense-paid trip from Portland to Reno, Nevada, valued at $455.50, and two tickets to a professional basketball game, valued at $95.

Similarly, while negotiating on behalf of OSP with Stan, Clay and Jeff Zeeb for the development of OSP facilities in Salem and Central Point, petitioner entered into a private transaction with the Zeebs. Petitioner traded his parcel of unimproved real property, valued at $9,500, for a condominium, valued at $44,000. Petitioner's net gain from that transaction was $34,500. At that time, petitioner also disclosed to Stan Zeeb an internal OSP memorandum that described the address of a parcel of real property in Central Point that OSP was considering acquiring, the name of the owner, and the price the owner was asking.

On October 16, 1992, the Commission voted to conduct a "preliminary review" of possible violations of ORS chapter 244 by petitioner during his tenure with OSP. It notified petitioner of its decision. Petitioner moved to dismiss

the case on the ground that the Commission lacked jurisdiction over him, because he had retired and therefore was no longer a public official. That motion was denied.

After its investigation, the Commission sent petitioner a proposed stipulated final order, concluding that petitioner violated ORS 244.040(1),(2) and (6)[1] and *former* ORS 244.120(1)(d)[2] in his dealings with Schroth and the Zeebs. A letter enclosed with the proposed order informed petitioner that he had 21 days in which to request a contested case hearing, and that if he did not request a hearing, his right to a hearing would be waived and a default order would be entered against him. Petitioner did not request a hearing, but

---

[1] At the relevant time, ORS 244.040 provided, in part:

"The following actions are prohibited regardless of whether potential conflicts of interest are announced or disclosed pursuant to ORS 244.120:

"(1) No public official shall use official position or office to obtain financial gain for the public official, other than official salary, honoraria or reimbursement of expenses, or for any member of the household of the public official, or for any business with which the public official or a member of the household of the public official is associated.

"(2) No public official or candidate for office or a member of the household of the public official or candidate shall solicit or receive, whether directly or indirectly, during any calendar year, any gift or gifts with an aggregate value in excess of $100 from any single source who could reasonably be known to have a legislative or administrative interest in any governmental agency in which the official has or the candidate if elected would have any official position or over which the official exercises or the candidate if elected would exercise any authority.

"* * * * *

"(6) No public official shall further the personal gain of the public official through the use of confidential information gained in the course of or by reason of the official position or activities of the public official in any way."

ORS 244.040 has since been amended by Oregon Laws 1993, chapter 743, section 9.

[2] *Former* ORS 244.120(1)(d) has since been renumbered ORS 244.120(1)(c) and amended by Oregon Laws 1993, chapter 743, section 15. Before that amendment, *former* ORS 244.120(1) provided:

"(1) When met with a potential conflict of interest, a public official shall:

"* * * * *

"(d) If the public official is any other appointed official subject to this chapter, notify in writing the person who appointed the public official to office of the nature of the potential conflict, and request that the appointing authority dispose of the matter giving rise to the potential conflict. Upon receipt of the request, the appointing authority shall designate within a reasonable time an alternate to dispose of the matter, or shall direct the official to dispose of the matter in a manner specified by the appointing official."

requested reconsideration of his motion to dismiss. The Commission denied petitioner's motion for reconsideration, and entered a default order. The default order concluded that petitioner committed violations of ORS 244.040(1) on four occasions, ORS 244.040(2) on two occasions, ORS 244.040(6) on one occasion, and *former* ORS 244.120(1)(d) on four occasions. Consequently, the Commission imposed civil penalties, under ORS 244.350,[3] and a forfeiture, under ORS 244.360, of double the financial benefit realized by petitioner as a result of his violations.

On review, petitioner renews his contention that the Commission lacked jurisdiction to investigate his violations of ORS chapter 244, or to enforce that chapter against him, because he was no longer a public official. He argues that, before the 1993 amendments, a "public official" was defined in the present tense as a person who "is serving" the state, its subdivisions or another public body as an officer, employee, agent or otherwise. *Former* ORS 244.020(16).[4] Petitioner contends that, under *former* ORS 244.020(16), the Commission lacked authority to investigate those who were not presently public officials, and could not enforce the government ethics laws against such persons.

---

[3] That statute has since been amended by Oregon Laws 1993, chapter 743, section 29, and Oregon Laws 1993, chapter 747, section 2.

[4] *Former* ORS 244.020(16) has since been amended and renumbered ORS 244.020(15). Or Laws 1993, ch 743, § 8. ORS 244.020(15) now defines public official as

"any person who, when an alleged violation of this chapter occurs, is serving the state of Oregon or any of its political subdivisions or any other public body of the state as an officer, employee, agent, or otherwise, and irrespective of whether the person is compensated for such services."

The purpose of that amendment was to clarify the meaning of the statute on the precise issue presented in this case. Patrick Hearn, executive director of the commission, testified before the House Committee on Rules and Reorganization that the amendment

"has to do with defining 'public official,' clarifying that a public official, for purposes of this section of law, is a person who, when the alleged violation of the chapter occurs, is serving the state or political subdivision.

"* * * * *

"The way the law is applied by the commission now and the way [the commission has] consistently been advised * * * by the [Department of Justice], the law already does this, that is, that the jurisdiction occurs over a public official at the time of the alleged conduct. * * * The motive is to make clear to people right up front where the jurisdiction occurs."

Petitioner's argument misunderstands the source of the Commission's investigatory and enforcement authority. That authority did not derive, as petitioner seems to assume, from the definition section of the statute. At the relevant time, the Commission's authority to investigate was provided by ORS 244.260,[5] which provided, in part:

"Upon its own instigation or [the] signed complaint of any person, the Commission may make investigations with respect to * * * *any* * * * *alleged violation of any provision of this chapter*[.]" (Emphasis supplied.)

That provision explicitly gave the Commission authority to investigate alleged *violations* of ORS chapter 244. The Commission alleged that petitioner committed violations of ORS chapter 244 while serving as a public official. The Commission, therefore, had statutory authority under ORS 244.260 to investigate those alleged violations. They were no less violations merely because, at the time of the investigation, petitioner was no longer a public official.

The Commission's authority to order civil penalties derived from ORS 244.350, which provided:

"*The Commission may impose civil penalties* not to exceed $1,000 *for violating any provision of this chapter* or any resolution adopted pursuant thereto except that for violation of ORS 244.045 the Commission may impose a civil penalty not to exceed $5,000. Any penalty imposed under this section is in addition to and not in lieu of any other penalty or sanction that may be imposed according to law, including removal from office." (Emphasis supplied.)

Like its investigatory authority, the Commission's authority to impose a civil penalty was predicated on the violation, not the status of the violator at the time penalties were imposed. If a person violated the chapter, the Commission could impose a civil penalty. Nothing in the statutes describing the Commission's investigatory or enforcement authority suggested that that authority was limited to cases in which the violator was still a public official.

Other provisions of ORS chapter 244 bolster our conclusion. For example, the "revolving door" prohibition,

---

[5] ORS 244.260 has since been amended by Oregon Laws 1993, chapter 743, section 18.

ORS 244.045,[6] was necessarily directed *only* at former public officials. Nonetheless, the Commission had express authority, under ORS 244.350, to impose civil penalties for a violation of that statute.[7]

Petitioner does not challenge the Commission's conclusions that he violated ORS 244.040(1), (2) and (6) and *former* ORS 244.120(1)(d). Because petitioner violated ORS chapter 244, the Commission had authority under ORS 244.350 to impose civil penalties against him.[8]

Affirmed.

---

[6] ORS 244.045 provided:

"A person who has been a Public Utility Commissioner, the Director of the Department of Insurance and Finance, the Insurance Commissioner, Supervisor of the Savings and Loan, Credit Union and Consumer Finance Section or the Supervisor of the Banking Section shall not:

"(1) Within one year after the public official ceases to hold the position become an employee of any private employer engaged in the activity, occupation or industry over which the former public official had authority; or

"(2) Within two years after the public official ceases to hold the position:

"(a) Be a lobbyist for or appear as a representative before the agency over which the person exercised authority as a public official;

"(b) Influence or try to influence the actions of the agency; or

"(c) Disclose any confidential information gained as a public official."

The statute has since been amended by Oregon Laws 1993, chapter 743, section 10.

[7] *See also* ORS 244.050(3), which is directed to candidates for certain public offices, regardless of whether the candidate ever attains public office.

[8] Petitioner makes no separate argument that the Commission lacked authority to impose a forfeiture under ORS 244.360.